UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RHONDA McGOWEN, ET AL.,

            Plaintiffs,                    No. 16-13216

v.                                         District Judge Terrence G. Berg
                                           Magistrate Judge R. Steven Whalen

KROGER DISTRICT I, ET AL.,

            Defendants.
_____/

**REPORT AND RECOMMENDATION**

On September 7, 2016, Plaintiffs Rhonda McGowen, Susan Ganoff, and Glenda Schnitz file a *pro se* civil complaint against Defendant Kroger District I. Following a motion to amend [Doc. #38] that was granted in part and denied in part [Doc. #52], Plaintiffs filed a First Amended Complaint ("FAC")[Doc. #53] naming as Defendant Kroger Co. of Michigan 709 ("Kroger"), where they all worked at the time of the allegations forming the basis of the FAC. Before the Court are Defendant's Motions for Summary Judgment [Doc. #70], Motion to Dismiss for Failure to Cooperate in Discovery [Doc. #58], and Motion to Dismiss Plaintiffs' Claim for Damages [Doc. #71], which have been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(b). For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment [Doc. #70] be GRANTED, and that the Plaintiffs' claims in Case No. 16-13216 be DISMISSED WITH PREJUDICE.

-1-

I further recommend that Defendant's Motion to Dismiss [Doc. #58] and Motion to Dismiss Claim for Damages [Doc. #71] be DENIED AS MOOT.

## I.   FACTS

Plaintiffs' original complaint [Doc. #1] was a bare-bones document that alleged "discrimination, retaliation, and sexual harassment" in violation of "Title VII, Civil Rights Act."  Attached to that complaint is Plaintiff McGowen's EEOC Charge No. 471-2016-01452, alleging discharge and suspension based on sex, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, along with the EEOC's right to sue letter, dated July 20, 2016.  On August 29, 2017, the Court granted in part and denied in part the Plaintiffs' motion to amend the complaint, permitting them to bring claims of sexual harassment, retaliation, and wrongful discharge. [Doc. #52].

On September 5, 2017, Plaintiffs filed their FAC [Doc. #53].  Count I–sexual harassment–specifically names Plaintiffs McGowen and Schnitz, but as a *pro se* complaint can be liberally construed to be brought on behalf of all three Plaintiffs.[1]  In Count I, Plaintiffs claim that they "have been sexually harassed by Defendant with sexual innuendos and comments," by "sexually suggestive jokes," and "by the display of materials in the employee area of Defendant's store with sexually illicit [*sic* explicit?] and/or graphic content." FAC, ¶¶ 5-7.  In Count II–retaliation/discrimination–Plaintiffs allege that after engaging in the protected activities of filing grievances, calling Defendant's complaint number, and filing EEOC complaints, they were not allowed to train for open positions or to have the schedules for which they were entitled.  Count II

---

[1] *Pro se* pleadings are not held to the standard of a practicing attorney, but are given a liberal construction. *See Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), citing *Haines v. Kerner*, 404 U.S. 519, 520-21(1972); *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (*pro se* pleadings are held to "an especially liberal standard"); Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice").

also alleges that as of the filing of their civil action, Plaintiff McGowen was wrongfully discharged. *Id.* ¶¶ 9-12. In Count III, Plaintiff McGowen alleges that she was wrongfully discharged "due to an 'anonymous' complaint in violation of the Employee Manual," and in retaliation for her protected activities. *Id.* ¶ ¶ 14-16.

Plaintiff Schnitz testified at her deposition that she was initially hired at Kroger in 1999, as a cashier. *Motion for Summary Judgment* [Doc. #70], Exhibit 4, Schnitz Deposition, at 14. She was a member of the union, and thus subject to the collective bargaining agreement with Kroger. *Id.* at 49. Although she previously worked at a different store, she successfully bid on an Assistant Customer Service Manager ("ACSM") position at Store No. 709 in Clarkson, Michigan, in 2004. *Id.* 19-20. This was also a union position. *Id.* 16.

Ms. Schmitz testified about incidents that occurred at the Clarkston Store involving Holly Schmitt, an hourly associate, and Dion Walker. She described Ms. Schmitt as "one of those people that are full of drama." *Id.* 28-29. She testified that Ms. Schmitt made inappropriate sex-related comments, such as sucking on pickles and talking about bananas and oral sex, *Id.* at 163-66; and saying that she heard that someone said another employee should go outside and "get laid because she was being a royal bitch." *Id.* 160. She testified that she overheard Ms. Schmitt and Mr. Walker talking on the sales floor, and that Schmitt asked Walker why men play with their penises with their hands in their pockets. *Id.* 169-71. Ms. Schnitz complained to Mr. Walker, who, she said, acted like he did not know what she was talking about. *Id.*

Ms. Schnitz also testified that one time–she did not remember when–Mr. Walker jokingly asked her and Lisa Fink if they would be his "Kroger wife." *Id.* 191-92.

Ms. Schnitz testified about an incident in March of 2016, where a cashier told her

that another employee had said to the cashier, "It's time for you to go home and fuck your boyfriend." However, Ms. Schmitz did not herself hear this comment first-hand. *Id*. 268-71. Ms. Schnitz told the store's co-manager about this, and the co-manager told her that she would talk to the cashier and go over Kroger's sexual harassment policy. *Id*. 269.

Ms. Schnitz filed an EEOC questionnaire on June 17, 2015, in which she made a claim of employment discrimination based on sex and retaliation, including "sexual harassment." (Defendant's Exhibit 8). She stated that Holly joked with Dion Walker about "pocket pool," or men with their hands in their pockets playing with their penises. She also complained that one Sandy LePlat, who had less seniority, was promoted over her. On July 19, 2015, Ms. Schnitz filed her formal charge of discrimination with the EEOC. (Defendant's Exhibit 9). Ms. Schnitz testified at her deposition that the incident regarding the failure to promote occurred about six years before the June 8, 2017 deposition. *Schnitz Dep.*, 271-72.

Plaintiff Susan Ganoff was the manager of the deli department at the Clarkston store. *Ganoff Dep.*, Defendant's Exhibit 2, 18. She had worked at Kroger since October of 2007, starting at an in-store Starbuck facility. *Id*. 65. She started working at the Clarkston store in 2011, and transferred to the Milford store in 2017. *Id*. 94.

While at the deli department at Clarkston, Ms. Ganoff received a number of disciplinary actions. She received a Significant Incident Report ("SIR") in November of 2013 because of expired food in the cooler, *see* Defendant's Exhibit 16, and she admitted that the deli department, which she supervised, did not always meet Kroger's expectations. *Ganoff Dep*. 221-22. In April of 2014, she received another SIR indicating that the deli Overall Satisfaction Goal ("OSAT") score was below target. OSAT scores are customer service responses. *Id*. 193, Defendant's Exhibit 17. She was given SIRs for

tardiness in May and June of 2012, and a Constructive Advice Record ("CAR")(another level of discipline) for having four tardies in a 90-day period.  Defendant's Exhibits 18, 19. Between September of 2014 and April of 2015, she received SIRs for being tardy six times; she did not dispute that she was tardy, or that the SIRs were appropriate under Kroger's attendance policy. *Ganoff Dep*. 349-50; Defendant's Exhibits 21, 22.

Ms. Ganoff receive an SIR on April 18, 2015 because the deli department failed a food safety audit for which she was responsible.  *Ganoff Dep.* 183-84.  She testified to the importance of following food safety standards, and was not aware of any other deli managers who had failed the food safety audit but were not issued SIRs.  *Id*. 188-89.

Ms. Ganoff testified that at one point in the Clarkston store, Hope Ellsworth, another employee, told her that she had received an unsolicited email from a person, containing a nude picture and a request for sex in exchange for money.  *Id*. 99.  Ms. Ganoff told Dion Walker, who was her supervisor, about this, but Mr. Walker did not say anything.  *Id*. 101.  Later, Ms. Ellsworth told her that it was Dion Walker who sent the email.  *Id*. 108.

Ms. Ganoff testified that two deli clerks approached her about Facebook posts by Mr. Walker, commenting on their pictures.  *Id*. 109.  Ms. Ganoff never saw these posts, did not know whether the clerks accessed them at work or at home, how many posts there were, or where Mr. Walker was at the time he posted.  *Id*. 110-111.  She reported this to her supervisor, who advised her to tell the clerks to "defriend him."  *Id*. 111.  Ms. Ganoff called Krogers 1-800 ethics hot line number.  *Id*. 112.

Ms. Ganoff testified about another incident where a mailbox in her department had the words "cock block" written on it.  She did not know who wrote this, or whether it was someone in the deli department.  *Id*. 117-18.  She reported this to Karen Davies, who took

the defaced paper mailbox and threw it in the garbage.  *Id*. 118-121.  Jen Cook, who had

first informed Ms. Ganoff about the mailbox incident, later told Ganoff to not "make a

big deal," and that is was a joke.  *Id*. 121-22.

Ms. Ganoff related another incident where someone drew a penis on Rhonda

McGowen's schedule in the break room.  Ms. Ganoff told the co-manager (she did not

recall who that was).  *Id*. 122-24.  She did not know who drew the picture.  *Id*. 130.

Ms. Ganoff testified that Mr. Walker made inappropriate comments at a

management meeting, specifically that he had "gotten lucky" last night.  *Id*. 134-35. Ms.

Ganoff reported this to Kroger's ethics hotline. *Id*. 137.  During the same call to the

hotline, she noted the Facebook posts she had been told about.  *Id*. 137.

Ms. Ganoff said that on another occasion, she was shucking corn, and Holly

Schmitt told Nick to take his shirt off "so she could see what was under there."  *Id*. 138.

Holly did not say anything else, and she did not recall Nick saying anything in response.

*Id*. 139.

Ms. Ganoff said that while she was taking down decorations after Christmas, she

saw that someone had drawn a penis on the wrapping paper outside a box.  She reported

this to Jamie Babel, but does not recall Ms. Babel saying anything.  Ms. Ganoff threw the

wrapping paper away.  She did not report the incident to anyone else.  *Id*. 139-144.  This

was in December of 2015.  *Id*. 144.

Ms. Ganoff applied for the comanager training program in 2016.  She testified that

the requirements for that program were a college degree, a letter from the applicant's

supervisor, and two rounds of interviews. Other considerations were the applicant's

disciplinary and attendance history, and whether the employee had been the manager of

more than one area of the store.  *Id*. 301-303.  Ms. Ganoff had the first interview, but later

received a telephone call from Kenneth Coleman telling her that she had failed step 1 of the interview process. *Id*. 318-19.  He told her that she needed to gain more leadership skills.  However, Ms. Ganoff understood that she could reapply in the future.  *Id*. 319. Ms. Ganoff acknowledged that the only two areas she had worked at Kroger were Starbucks and the deli department, and that the comanager's responsibilities included providing direction to employees in all of the departments, including the meat, grocery, produce, floral, cashier, and other departments.  *Id*. 320-21.

Ms. Ganoff claimed that her rejection from the comanager training was in retaliation for her having filed an EEOC charge.  *Id*. 352, 354.  However, she testified that she had no knowledge of whether Mr. Coleman or anyone who interviewed her know that she had filed an EEOC charge.  *Id*. 321-22.  She clarified that her discrimination charge was one and the same as her retaliation claim, and that there was no other discrimination. *Id*. 354-55.

Ms. Ganoff testified that her sexual harassment claim was based on being subjected to sexual jokes and pictures, specifically "Holly and her comments about Nick and taking his shirt off, Dion's comments in the boardroom meeting, the penis on the present."  *Id*. 353-54.

Ms. Ganoff transferred to the Milford store, but was fired on March 9, 2017.  *Id*. 355. She was fired for violating company policy, specifically working off the clock.  She did not dispute that she did so, and understood that working off the clock could subject Kroger to legal consequences.  *Id*. 357-58.  She was unaware of any other department manager employees who were caught working off the clock but were not discharged.  *Id.* 360-61.

Plaintiff Rhonda McGowen began her tenure at Kroger in 1977, as a cashier. *McGowen Dep.*, Defendant's Exhibit 4, 40-41.  She testified about the "pocket pool" conversation between Dion Walker and Holly Schmitt, adding that she "saw a little bit of what they were laughing.  I didn't know exactly what they were doing." *Id*. 122.  She thought that Holly's comment was "very inappropriate." *Id*. 122.  She said that in January, 2015, she and Ms. Schnitz made an anonymous complaint to the ethics hotline. *Id*. 100, 119.

Ms. McGowan testified that in January of 2015, Ms. Ellsworth told her that Dion Walker had sent Ellsworth a Craig's List ad portraying a nude photograph of him, soliciting sex for pay with either a male or female.  Although Ms. McGowen herself never saw the advertisement, she called the ethics hotline.  *Id*. 147-49.

On a few occasions between January and June of 2015, Ms. McGowen said, Holly Schmitt called her a "bitch" and a "crack whore." *Id*. 164.  Debbie Johnson, an ACSM, gave her the finger and called her a "crack whore bitch."  *Id*. 257.

Ms. McGowen testified that in April, 2015, she found a bag of dog feces in her yard, but she did not know who put it there.  *Id*. 247-48.  Other incidents about which she testified were someone drawing a penis next to her name on the work schedule, *Id*. 224-26; someone cutting her name out of the schedule in the break room, *Id*. 264; and her supervisor calling into a meeting a accusing her of "bringing drama into the workplace." *Id*. 268.

Ms. McGown claimed that Nicole Sako, a member of the Human Resources group, retaliated  against when she was fired for refusing to take a drug test, and for closing a complaint she had made because of allegedly being unable to reach her.  *Id*. 283-84.[2]  She said that Ms. Sako retaliated against her "[i]n response to me calling the 800 hotline for Dion Walker, Nick, and Holly for all the sexual innuendos and the penis and everything that was involved."  *Id*. 285.  Ms. McGowen testified that she had contacted the hot line on September 7, 2015 "because the harassment and everything was continuing."  *Id*. 279. In terms of her belief that Ms. Sako retaliated against her, Ms. McGowen testified as follows:

> "Q:   You say that Nicole Sako is the one who gave advice to Dion Walker about what to do in response to your refusal to take a drug test, correct?
>
> A:   Correct.
>
> Q:   All right. So you're saying you believe that was retaliatory–
>
> A:   Yes.
>
> Q:   –by Nicole?
>
> A:   Yes.
>
> Q:   I'm saying, what's your evidence of that?
>
> A:   I didn't have a job.  I had to fight my life back for my livelihood.
>
> Q:   Anything else?
>
> A:   That was retaliation.
>
> Q:   Do you have any other evidence that that was retaliation?
>
> A:   No."  *Id*. 285-86.

Ms. McGowen testified that Stephanie Opdyke retaliated against her for having

---

[2] On June 16, 2015, Ms. McGowen was discharged for refusing a drug test. She was reinstated on July 15,2015.  *McGowen Dep*. 278.

-9-

filed an EEOC complaint and having called the Kroger hot line.  *Id*. 287.  She did not know when Kroger learned that she had filed the EEOC complaint.  *Id*. 288.  She said that Kenyatta Appleton, another member of the Human Resources Group, retaliated against her by being involved in the decision to fire her.  *Id*. 288-89.  Although the letter of termination was signed by Karen Davies, Ms. Appleton was the person who told her why she was being terminated.  However, Ms. McGowen conceded that she did not know for sure who made the decision to fire her.  *Id*. at 289-90.

Ms. McGowen filed an EEOC charge of discrimination on July 22, 2015, claiming discrimination on the basis of sex, and retaliation.  *Defendant's Exhibit 35*.

On January 31, 2016, Ms. McGowen received a CAR for being discourteous to another employee.  *Defendant's Exhibit 39*.  The CAR noted that she had been previously warned for a similar incident.  *Id*.  Ms. McGowen understood that being rude or aggressive to other employees was a violation of Kroger policy, and could lead to an employees discharge.  *McGowen Dep.* 346-47.  In February of 2016, Kroger received an anonymous written complaint alleging that Ms. McGowen wsa "aggressive with the cashiers, management, courtesy clerks and other employees, there are verbal threats, uncontrolled anger and intimidation."  *Defendant's Exhibit 40*.  Following complaints by other employees, *Defendant's Exhibit 41*, Ms. McGowen received a CAR on February 2, 2016, stating that "[o]n January 19th and on 2-1-2016 Rhonda on 2 separate occasions was intimidating and threatening another associate."  *Defendant's Exhibit 42*.  Based on a violation of Kroger Rule No. 5, the CAR stated:

> "Rhonda is hereby suspended pending advisability of discharge per the employee handbook page 41, under Other Incidents that may Result in Immediate Discharge, #5 which states: Threatening, intimidating, coercing or interfering with employees, supervisors or customers."

The CAR was signed by Karen Davies, Store manager or Supervisor. *Id*.

On May 11, 2016, Stephanie Opdyke sent Ms. McGowen a termination letter stating:

> "We are informing you that the investigation by Karen Davies, for violation of store rule #5 has concluded.  Your employment with the Kroger Co. has been terminated effective 2/2/2016 for the above stated reason."
> *Defendant's Exhibit 43*.

Between April 11, 2015 and September 26, 2015, Kroger fired 11 other employees, both males and females, for violation of Rule 5.  *Defendant's Exhibit 46*.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate.  *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

-11-

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If the non-moving party cannot meet that burden, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.    DISCUSSION

### Motion for Summary Judgment [Doc. #70]

#### A.    Sexual Harassment

Title VII protects against gender-based discrimination, including  "'workplace [ ] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment....' " *Barrett v. Whirlpool Corp*., 556 F.3d 502, 514 (6th Cir.2009) (quoting *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993)).  In *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir.2008), the Sixth Circuit set forth the elements of this type of sexual harassment claim as (1) plaintiff was a member of the protected class; (2) plaintiff was subjected to unwelcome harassment, based on sex; (3) the harassment had the effect of unreasonably interfering with plaintiff's work performance and created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer.

The gravamen of a Title VII claim is *discrimination* based on sex.  " [I]f the [work] environment is just sexually hostile without an element of gender discrimination, it is not actionable." *E.E.O.C. v. Harbert-Yeargin, Inc*., 266 F.3d 498, 520 (6th Cir. 2001). In *Harbert-Yeargin*, the Sixth Circuit differentiated between merely rude or vulgar conduct, and conduct involving differential treatment based on gender:

> "Since the conduct complained of in many of these sexual harassment cases is so offensive, it is easy to understand that a sense of decency initially inclines one to want to grant relief. It is easy to forget, however, that Title VII deals with discrimination in the workplace, not morality or vulgarity. When Title VII was amended to encompass discrimination predicated on sex, the primary focus was on protecting women in the workplace from male supervisors and coworkers treating them differently because of their gender. If the word "gender" had been used instead of "sex," some of the confusion that exists today probably would have never developed." *Id*. at 519-20.

Hence, Title VII is inapplicable to "complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citations omitted).  To be actionable, the conduct complained of must be "severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Bowman v. Shawnee State Univ*., 220 F.3d 456, 463 (6th Cir.2000).  *See also Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993).

Some of the conduct about which Plaintiffs complain was not directed at them. For example, Ms. McGowen was not a participant in the conversation where Holly Schmitt questioned Dion Walker about "pocket pool."  Ms. Schmitt's ribald comments and pantomimes  regarding oral sex, and Mr. Walker's random comment in a meeting about "getting lucky" were not directed at anyone in particular.  Nor was Ms. McGowen the target of, or did she even see Walker's alleged Facebook posting that Ms. Ellsworth

told her about.  While a Title VII claim does not always require that comments or actions be specifically directed to a plaintiff, it weighs against a finding of an objectively hostile environment. *Williams v. CSX Transp. Co.*, 533 F. App'x 637, 640–41 (6th Cir. 2013), quoting *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir.1997)("[T]his fact contributes to our conclusion that the conduct here was not severe enough to create an objectively hostile environment.").

Much of the vulgar behavior complained of–such as crude drawings of male genitalia in the break room and on the Christmas decoration–was there for all employees to see.  Indeed, Ms. Schmitt's "pocket pool" comment was made to Mr. Walker, a male. "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Harris*, 510 U.S. at 25 (Ginsburg, J. concurring).  *See also Wieland v. Dept. of Transp.–State of Indiana*, 98 F.Supp.2d 1010, 1019 (N.D. Ind. 2000)("Because Title VII is premised on eliminating discrimination, inappropriate conduct that is inflicted on both sexes, or is inflicted regardless of sex, is outside the statute's ambit.").[3]

The conduct complained of by all three Plaintiffs occurred over a period of 18 to 24 months.  While it may have reflected a Junior High School mentality among some of the store employees, and while the Plaintiffs were understandably offended, they have offered no evidence that it was gender-based, or so pervasive as to affect the conditions of their employment.[4]  Indeed, the bases on which Ms. McGowan and Ms. Ganoff were fired

---

[3] Ms. Ganoff testified that an unknown person drew a penis on Ms. McGowan's schedule in the break room.  While this was directed at Ms. McGowen, it was an isolated incident perpetrated by an unknown person, and cannot be consider part of a "pervasive" pattern of conduct that would support a Title VII claim.

[4] In fact, Plaintiffs have not responded to this motion with any affidavits or sworn testimony supporting their claims.  Instead, they merely submit a "time line," which is in

had nothing to do with the alleged harassment.  Defendant should be granted summary judgment on Count I, sexual harassment.

## B.    Retaliation

Under Title VII, an employer may not retaliate against an employee who has "opposed" any practice that is unlawful under Title VII (the "opposition clause"), or against an employee who has "participated" in any manner in an investigation under Title VII (the "participation clause"). 42 U.S.C. § 2000e–3(a). *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir.), cert. denied, 531 U.S. 1052 (2000).

Under either clause, Plaintiffs must first support a *prima facie* case, by showing that (1) they engaged in activity protected by Title VII; (2) the employer knew of their exercise of protected activity; (3) the employer took an adverse employment action; and (4) there was a causal connection between the adverse employment action and the exercise of protected conduct.  If the Plaintiffs establish a *prima facie* case, the burden shifts to Defendant to articulate legitimate, nondiscriminatory reasons for the adverse action.  Plaintiffs must then demonstrate that the proffered reasons were a mere pretext for discrimination.  *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000). Plaintiffs bear the burden of persuasion throughout the entire process. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 793 (6th Cir. 2000).

Filing EEOC charges and complaining about inappropriate workplace conduct is protected activity; Plaintiffs have met the first prong of the *prima facie* case.

---

effect an unsworn statement of facts. To an extent, the "time line" parallels their sworn testimony as set forth in the deposition transcripts that the Defendant has submitted.  As discussed, their testimony supports, not rebuts the Defendant's motion for summary judgment.

Plaintiff Schnitz alleges three instance of retaliation.  First, she alleges that Karen Davies, the store manager at the time, made her come out of the accounting room and ring up customers when there were other people that could take care of that.  *Schnitz Dep.* 280-81.  She testified that Ms. Davies did this because she knew about Ms. Schnitz's EEOC complaint.  *Id*.  When asked about how Ms. Davies would have known this, her reply showed that her belief was based on speculation:

Q:    What led you to believe that Karen knew about the case?

A:    Probably leading back to the first day I met her she was like not nice to me. Usually managers on the first day are kind of nice.

Q:    Is there anything else which led you to believe that Karen knew about your case on this day you wrote the note?

A:    Karen did a lot of things. On this particular day there is not–it's not dated or anything.

Q:    You're saying your notes aren't dated, correct?

A:    I don't know why I noted, but I remember another–yes, just basically the way she used to speak to me.

Q:    Is there anything else that led you to believe that Karen knew about your case when you were writing about the events described in this note?

A:    That's probably it.  *Id*. 281.

Other than this speculation, Ms. Schnitz has presented no evidence that Ms. Davies had any knowledge of the EEOC complaint.  As the Sixth Circuit stated in *Gooden v. City of Memphis Police Dept*., 2003 WL 21421640, *2 (6th Cir. 2003), "[c]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not enough to defeat a well-supported motion for summary judgment." Ms. Schnitz  fails the second prong of *Johnson*.  In addition, Ms. Schnitz has not established that she suffered an adverse employment action when she was asked to check out customers.  In *Hollins v. Atlantic Company*, 188 F.3d 652 (6th Cir.1999), the Sixth Circuit held that to meet the

"adverse action" requirement in a Title VII retaliation case, the plaintiff must show a

"materially adverse change in the terms and conditions of her employment " Id. at 662.

*Hollins* then described what a "materially adverse change" would and would not entail:

> "[A] materially adverse change in the terms and conditions of employment
> must be more disruptive than a mere inconvenience or an alteration of
> responsibilities. A materially adverse change might be indicated by a
> decrease in wage or salary, a less distinguished title, a material loss of
> benefits, significantly diminished material responsibilities, or other indices
> that might be unique to a particular situation." *Id*. (Citations omitted).

Here, Ms. Schmitz suffered "a mere inconvenience or an alteration of

responsibilities," and nothing more. She therefore fails the third prong of *Johnson* as well.

Likewise, her second claim of retaliation, which involved her not getting a preferred work

schedule, does not rise to the level of an adverse employment action under Title VII.

Ms. Schnitz's third claim of retaliation is premised on her not getting a promotion,

and that Sandy LePlat, who had less seniority, was promoted over her.  However, she

testified that this occurred about six years before the June 8, 2017 deposition. *Schnitz*

*Dep.*, 271-72.  Any Title VII claim arising out of a six-year-old failure to promote is

barred by the statute of limitations.  Title VII requires a plaintiff to file a charge of

discrimination within 300 days of the alleged discriminatory practice. 42 U.S.C. §

2000e-5(e). A federal civil complaint must then be filed within 90 days of the plaintiff's

receipt of a right to sue letter.  28 U.S.C. §2000e-16(c).

Ms. Ganoff's claim of retaliation centers on her rejection for a comanager training

program in 2016.  Kenneth Coleman telephoned her to inform her that she had failed step

1 of the interview process.  However, she has presented no evidence that Mr. Coleman or

the people that interviewed her had any knowledge of her EEOC complaint.  To the

contrary, she testified as follows at her deposition:

"Q:     Do you know if Mr. Coleman had any knowledge that you had filed an
        EEOC charge against the company?

A:      No.

Q:      The two people who interviewed you in the Novi office, do you know
        whether they knew that you filed an EEOC charge against the company?

A:      No.

Q:      Do you have any information that suggests that Mr. Coleman knew that you
        had sat in on Rhonda McGowen's disciplinary meeting?

A:      No.

Q:      How about the two employees in the Novi office?  Do you have any
        information to suggest that the two people you interviewed with in the Novi
        office knew that you sat in on Rhonda McGowen's disciplinary meeting?

A:      No evidence."  *Ganoff Dep.* 321-22.

As with Ms. Schnitz, Ms. Ganoff fails the second prong of the *Johnson* test for

establishing a *prima facie* case.  She also fails the fourth prong, in that she has not shown

any causal connection between her filing an EEOC case and being turned down for

management training.

In addition, even if Ms. Ganoff had established a *prima facie* case, she has not

shown that Kroger's proffered reasons for not admitting her to the training program were

pretextual.  Indeed, she conceded that the comanagers responsibilities included providing

directions to employees in all of the Kroger departments, yet she had experience in only

two: Starbucks and the deli.  She testified that experience working in other departments,

and specifically whether she had been a manager in multiple areas, was a consideration

for the position, as was her attendance and disciplinary history.  *Id*. 200-201, 302-302.

Ms. Ganoff had received a number of disciplinary actions for both attendance issues and

performance issues in the deli department. She also conceded that she did not request a

recommendation letter from a supervisor, a requirement for the program.  *Id*. 306-307.

-18-

In a Title VII retaliation claim, a plaintiff must show that the "protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). Here, Ms. Ganoff was rejected from the management training program for myriad reasons unrelated to having filed an EEOC complaint months earlier.

To the extent that Ms. Ganoff alleges that her firing from the Milford store was retaliatory, that claim also fails on multiple grounds. First, there is no evidence that her managers at Milford were aware of any protected activity. In addition, she was fired for violating the clear Kroger policy of "working off the clock," and did not deny that she did so. She testified that she was not aware of any other employees who committed this infraction but were not fired. *Id*. 355-61. She has neither established a *prima facie* case nor shown that Milford's reasons for firing her were pretextual.

Ms. McGowen alleges that Kroger's decision to fire her was in retaliation for her protected activities; thus, her retaliation claim in Count II overlaps with her retaliation claim in Count III. Kroger argues that Ms. McGowan did not exhaust her administrative remedies as to the retaliation count.

Ms. McGowen filed an EEOC charge on July 22, 2015, claiming sex discrimination and retaliation. *See Defendant's Exhibit 35*. Her right to sue letter was mailed on July 20, 2016. *Id*. She filed her complaint on September 7, 2016, within the 90-day window for doing so. Retaliation that is alleged to have occurred before Ms. McGowen filed the EEOC charge is clearly exhausted. In addition, retaliation that is alleged to have occurred *after* the July 22, 2015 EEOC charge or after her civil complaint was filed is properly before the Court. "Courts have held 'that it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out

of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court.' *Gupta v. East Texas State Univ*., 654 F.2d 411, 414 (5th Cir.1981); *See also Baker v. Buckeye Cellulose Corp*., 856 F.2d 167, 168–69 (11th Cir.1988). Because retaliation claims, by definition, arise after the filing of the EEOC charge, this rule promotes efficiency by requiring only one filing. *Id*." *Ang v. Procter & Gamble* Co., 932 F.2d 540, 546–47 (6th Cir. 1991)*, abrogated on other grounds, Arbough v. Y&H Corp*., 546 U.S. 500 (206), *abrogation on other grounds recognized, Hill v. Nicholson*, 383 Fed. App'x 503 (6th Cir. 2010),

Nevertheless, Ms. McGowan's retaliation claim fails on the merits. As with her co-Plaintiffs, she meets the first prong of a *prima facie* case in that she engaged in protected activity. She suffered an adverse employment action when she was fired. However, she has not shown a causal connection between the two events, and has not shown that the filing of an EEOC complaint or any other protected activity was the but-for motivation for her discharge. She was fired for violating Kroger Store Rule #5. She has not provided any evidence that similarly situated employees who violated this Rule were not fired, and in fact, Between April 11, 2015 and September 26, 2015, Kroger fired 11 other employees, both males and females, for violation of Rule 5. *Defendant's Exhibit 46*.

In Count III of the FAC, Ms. McGowan also appears to raise a state law claim that she was wrongfully discharged "in violation of the Employee Manual." Ms. McGowan was a union employee, and as such was covered by a collective bargaining agreement ("CBA") with Kroger, an agreement that provided for a grievance and arbitration procedure. In *Stratoti v. Kroger Co.*, 184 F. Supp. 2d 718, 722 (S.D. Ohio 2002), the Court held that under these circumstances, the plaintiff's state law wrongful discharge claim was preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29

U.S.C. § 185, *et seq*.:

> "Stratoti's right not to be discharged (if she had such a right) would depend upon the rights granted to her by the collective bargaining. Consequently, although Stratoti's claim for failure to pay her wages in accordance with the oral agreement may not be preempted by the LMRA, *her claim that she was wrongfully discharged is completely preempted*." (Emphasis added).

*Stratori* quoted the Tenth Circuit's decision in *Saunders v. Amoco Pipeline Co.*, 927 F.2d 1154, 1156 (10th Cir.1991) as follows:

> "Plaintiff's two state law claims essentially asserted causes of action for wrongful discharge. The applicable collective bargaining agreement between defendant and its employees governs employee discharges and provides grievance and arbitration procedures through which an employee can challenge a discharge as wrongful. Because any determination of defendant's liability under the state law claims would, thus, inevitably involve interpretation of the collective bargaining agreement, section 301 preempted these claims."

Likewise here, any claim of wrongful discharge based on an alleged violation of the Employee Manual, a claim that would be addressed under the terms of the CBA, is preempted by the LMRA.

### **Motion to Dismiss [Doc. #58] and to Dismiss Claim for Damages [Doc. #71]**

Defendant has filed two motions to dismiss under Fed.R.Civ.P. 37(b)(2)(A) for discovery violations [Doc. #58 and Doc. #71]. However, because, as discussed above, Defendant is entitled to summary judgment on the merits, the interests of judicial economy augur in favor of denying these motions as moot.

## IV.   CONCLUSION

I recommend that Defendant's Motion for Summary Judgment [Doc. #70] be GRANTED, and that the Plaintiffs' claims in Case No. 16-13216 be DISMISSED WITH PREJUDICE.

I further recommend that Defendant's Motion to Dismiss for Failure to Cooperate in Discovery [Doc. #58] and Motion to Dismiss Claim for Damages [Doc. #71] be DENIED AS MOOT.

Any objections to this  Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: September 7, 2018                    s/R. Steven Whalen
                                            R. STEVEN WHALEN
                                            U.S. MAGISTRATE JUDGE

---

## CERTIFICATE OF SERVICE

I hereby certify on September 7, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to non-registered ECF participants on September 7, 2018.

                                            s/Carolyn M. Ciesla
                                            Case Manager for the
                                            Honorable R. Steven Whalen